**Nathaniel PAXTON,
Petitioner-Appellant,**

v.

**Robert P. JARVIS, Sheriff, DeKalb
County, Respondent-Appellee.**

**No. 83–8136.**

United States Court of Appeals,
Eleventh Circuit.

July 6, 1984.

---

Thomas H. Christopher (Court-appointed), Atlanta, Ga., for petitioner-appellant.

Ann Poe Mitchell, Susan Brooks, Asst. Dist. Attys., Decatur, Ga., for respondent-appellee.

Before RONEY and VANCE, Circuit Judges, and SIMPSON, Senior Circuit Judge.

RONEY, Circuit Judge:

Nathaniel Paxton was convicted in Georgia state court of burglary and rape. That conviction was affirmed on appeal. *Paxton v. State,* 159 Ga.App. 175, 282 S.E.2d 912, *cert. denied,* 248 Ga. 231, 283 S.E.2d 235 (1981). The district court denied habeas corpus relief when Paxton asserted his

conviction should be set aside because of infirmities in two confessions admitted against him at trial. Paxton claimed the confessions were obtained in violation of his rights under the Georgia Juvenile Code, were coerced, and violated his *Miranda* rights. He requested an evidentiary hearing on the voluntariness issue. The district court denied an evidentiary hearing and decided the issue on the basis of the state court record. We affirm.

Petitioner contends the police violated the Georgia Juvenile Code's requirement that officers arresting a juvenile must immediately bring the child before the juvenile court or promptly contact a juvenile court intake officer.[1] This state law question was resolved against petitioner in state court. *Paxton v. State*, 282 S.E.2d at 915. Federal courts review only constitutional, not state, questions on petitions for habeas corpus relief. 28 U.S.C.A. § 2241(c). In any event, failure of state police to take a defendant promptly before a judicial officer does not make defendant's conviction constitutionally infirm unless his defense was prejudiced thereby. *Whitaker v. Estelle*, 509 F.2d 194, 196 (5th Cir.), *cert. denied*, 423 U.S. 872, 96 S.Ct. 140, 46 L.Ed.2d 103 (1975). The only prejudice suggested is that his confession was obtained during that time. Assuming the confession was voluntary, the defendant's defense was not prejudiced by the delay.

The main issue, then, is the voluntariness of petitioner's confessions. A confession is voluntary if under the totality of the circumstances it was the product of "free and rational" choice. *United States v. Vera*, 701 F.2d 1349, 1364 (11th Cir. 1983). A state court's findings of historical fact are entitled to a presumption of correctness under 28 U.S.C.A. § 2254(d). This Court, however, must make its own determination of voluntariness on an independent review of the record. *Mincey v. Arizona*, 437 U.S. 385, 398, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290 (1978); *Cox v. Montgomery*,

718 F.2d 1036, 1038 (11th Cir.1983); *Jurek v. Estelle*, 623 F.2d 929, 931–32 (5th Cir. 1980) (en banc), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981).

There is some dispute as to what findings of fact were made in state court. Although the state trial court held a *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), hearing in addition to the trial, no explicit findings of fact were put in the record. On review, a Georgia appellate court stated the facts of the case. An examination of the evidence presented at the *Jackson v. Denno* hearing and the trial shows what findings the state courts actually made.

Dora Butler, a 97-year-old woman, was raped and murdered on the night of August 7, 1976. The next day at 3:00 p.m. the police asked petitioner to come to the station for fingerprinting. The police asked petitioner's mother to accompany them. Petitioner was then one month short of his sixteenth birthday. After the fingerprinting was completed, petitioner was taken home. Because of problems with the first set of prints, the police requested that petitioner and his mother return to the police station. This occurred at 8:30 p.m. on the same day. By 10:00 p.m. a positive match between petitioner's left thumb print and a print found in Dora Butler's house had been made. Both petitioner and his mother were advised that petitioner was under arrest for the rape and murder of Dora Butler. The police then began to interrogate petitioner.

Two police officers testified that prior to questioning petitioner they read him the *Miranda* warnings and had him read the warnings out loud to his mother. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Petitioner's mother was not asked to read the warnings because she is illiterate. Both petitioner and his mother signed waiver of rights forms.

---

1. Ga.Code Ann. §§ 24A–1402, 24A–2002 (revised and now codified at O.C.G.A. §§ 15–11–19, 15– 11–31).

At 12:30 a.m., after approximately two and a half hours of questioning in the presence of his mother, petitioner signed a written statement. In that statement he admitted breaking into Dora Butler's house the night before with two other boys but claimed to have left before any harm came to the woman. A short while after the statement was made, petitioner's mother requested that she be taken home. Around 2:00 a.m., petitioner was allowed to visit with his 25-year-old brother for several minutes. Two other detectives then interrogated petitioner. No members of his family were present. After twenty minutes these detectives advised the arresting officer that petitioner was ready to make a second statement. At 3:35 a.m., the arresting officer began transcribing the second statement and it was completed and signed by petitioner at 4:27 a.m. In this statement petitioner incriminated himself in the rape and murder.

Around 3:00 or 3:30 a.m., the police had contacted a juvenile court judge by telephone. At approximately the same time, a member of the police's Youth Squad had begun monitoring the questioning of petitioner.

During this entire period from approximately 8:30 p.m., August 8, until 4:30 a.m., August 9, petitioner was kept in the Criminal Investigation Division's conference room. There was a bathroom in the conference room available to him. He was given no food except a soft drink and perhaps some crackers and had no opportunity to sleep.

Petitioner and the police disagree as to thoroughness with which the *Miranda* rights were explained to him and his mother, the manner in which the interrogations were conducted, and who provided the substance of the confessions. Both petitioner and his mother testified that the police and petitioner read only a portion of the rights. They also claimed not to have understood the *Miranda* rights. Petitioner, corrobo-

rated by his mother, claims that during the questioning prior to his first statement the police yelled at him. During the second questioning, petitioner asserts the police used racial slurs, tried to intimidate him by alluding to the electric chair, threatened to do physical harm to him, and actually beat him. Petitioner also claims the police made up the confessions. The police deny each of these assertions.

■ Substantially all of this evidence was before the state trial court in the *Jackson v. Denno* hearing. Because petitioner did not testify at the hearing, however, his claim about what occurred during the second questioning did not come out. The court found the petitioner's confessions were voluntary. Although the court made no findings of fact, implicit in the court's conclusion to allow the statements is the finding that petitioner received *Miranda* warnings and that petitioner was not threatened by the police. *See Cox v. Montgomery,* 718 F.2d 1036, 1037 (11th Cir. 1983). The state appellate court had the entire trial record before it on review. Its statement of the facts does not mention threats or beatings. A state appellate court's findings of fact are entitled to the presumption of correctness under 28 U.S. C.A. § 2254(d). *Sumner v. Mata,* 449 U.S. 539, 546–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981).

■ We conclude there are state court findings entitled to a presumption of correctness that no threats or beatings took place during petitioner's interrogation and that petitioner was informed of the *Miranda* rights. There is ample support for these findings in the record.

■ After examining the factors enunciated in *West v. United States,* 399 F.2d 467, 469 (5th Cir.1968), *cert. denied,* 393 U.S. 1102, 89 S.Ct. 903, 21 L.Ed.2d 795 (1969), we hold that petitioner's confession was voluntary.[2] The factors of greatest significance in this case are that petitioner

---

**2.** In *West,* the former Fifth Circuit stated that the following nine factors should be considered in determining whether a juvenile's confession

was voluntary: (1) age; (2) education; (3) whether the accused had knowledge of the substance of the charge and the nature of his right

was almost sixteen years old, members of petitioner's family had ample contact with him at the police station, petitioner was told of the charges against him and given *Miranda* warnings, and the questioning, although extending over most of the night, was neither continuous nor conducted by use of threats or beatings.

The district court properly denied petitioner's request for a evidentiary hearing on the voluntariness issue. An evidentiary hearing is "required unless the state court trier of fact has after a full hearing reliably found the relevant facts." *Thomas v. Zant*, 697 F.2d 977, 980 (11th Cir. 1983), *cert. denied*, (quoting *Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963)). Here, a hearing was held in state court and as discussed above the state courts' findings of fact are implicit in the record. Petitioner does not contend that the state hearing was not "full and fair" as defined by *Townsend v. Sain*. *See Thomas*, 697 F.2d at 980.

AFFIRMED.

---

to an attorney and to remain silent; (4) whether the accused was held incommunicado or allowed to consult with relatives, friends, or an attorney; (5) whether the accused was interrogated before or after formal charges had been filed; (6) methods used in interrogation; (7) length of interrogation; (8) whether vel non the accused refused to voluntarily give statements on prior occasions; and (9) whether the accused has repudiated an extrajudicial statement at a later date.