STATE OF NEBRASKA, APPELLEE, v. CHESTER McSWAIN, APPELLANT.

229 N. W. 2d 562

Filed May 29, 1975. No. 39731.

Frank B. Morrison and Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, and Jerold V. Fennell, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

NEWTON, J.

The defendant Chester McSwain, a black male, was charged with conspiracy to obtain money by false pretenses. He was tried and convicted. On appeal he assigns as error the admission of evidence of telephone

conversations, of a statement that the caller was a black male, and of suspicious conduct by defendant's brother. We affirm the judgment of the District Court.

Rodney Oberle, payroll manager for the University of Nebraska at Omaha, received a phone call from a person who stated he was Dean Herzog. The caller stated Oberle should prepare a check to the First National Bank of $9,000 to reimburse the bank for money to be delivered. The caller stated the money was needed for a payroll and that he would pick it up. Oberle did not know a Dean Herzog but did know a Norman Herzog. Oberle testified the voice sounded like that of a black male. Oberle had never known payroll transactions to be handled in such manner and was unable to verify that any financial transaction was taking place in the University. He subsequently received a phone call from the bank and was informed a Mr. Herzog had requested that $9,000 be sent to the University. He later received another call from a person purporting to be Norman Herzog stating the transaction was okay at his end and inquiring if it was all right at Oberle's end. He said it was. Arrangements were made with the bank to deliver a moneybag. On delivery of the bag Oberle went to the cashier's department where he was approached by the defendant who said he was there to pick up the bag. They went to the payroll department where defendant received the bag and left the building. On leaving the building defendant was apprehended and dropped a leather pouch containing the moneybag. Oberle could not identify the defendant's voice as the one he heard on the telephone.

Norman Herzog, assistant director of radio-television engineering at the University, stated he had not called Mr. Oberle or the bank and had not authorized anyone else to do so. He did not know the defendant and had not authorized him to make the pickup.

An accounting clerk testified that she had received a call from a "Mr. Herzog" saying he had sent someone

to pick up the money and inquiring if he had been there. She could not identify the voice.

The defendant's brother was apprehended in the building after defendant's arrest and after a police officer had been informed he was acting suspiciously. On being questioned the brother stated his name was Donald Newton and that he had been with a girl who went out to register. There had been no such female registrant that afternoon. He also stated that his vehicle was in the library parking lot. He then stated the car was not there and that he had ridden out with his brother who was to pick him up. The address he gave was the same as defendant's and he proved to be defendant's brother Donald Newton McSwain.

A bank employee testified to receiving a call from a "Mr. Herzog" requesting delivery of the $9,000 payroll and arranging for it to be picked up by Wells Fargo. A cashier's check for $101 was placed in the bag with cut paper. He could not identify the voice as defendant's.

After delivery of the bag to Oberle a call was received from a female stating she was Mr. Herzog's secretary and inquiring if the package had arrived. She was told it had. The caller was not identified.

After defendant received the bag a male called asking about the delivery. The party said he was Mr. Herzog.

The telephone conversations were admissible. There are exceptions to the general rule requiring identification of participants in telephone conversations. "There is a distinct class of cases comprising statements which themselves are facts constituting part of the transaction under investigation and which are admissible in evidence under the rule of res gestae. The motive, character, and object of an act are frequently indicated by what was said by the person engaged in the act; such statements are in the nature of verbal acts and are admissible in evidence with the remainder of the transaction which they illustrate. The purpose of admitting a verbal act or fact is to prove the nature of an act rather than to

prove the truth of any alleged statement." 29 Am. Jur. 2d, Evidence, § 710, p. 773. See, also, Annotation, 13 A. L. R. 2d at 1412, et seq. In the present instance the calls were an inherent part of the plan to obtain money by false pretenses and essential to its success. It must be borne in mind that this is a matter of conspiracy and the strict rule of identity is not applicable. In conspiracy cases, unusual latitude is permitted in admission of evidence where the prosecution must necessarily depend on circumstantial evidence in order to establish criminal intent, and the entire history of the conspiracy may be shown even though other crimes may be involved, if the evidence tends even remotely to establish the ultimate fact. Jones v. People, 118 Colo. 271, 195 P. 2d 380.

In Gordon v. United States, 164 F. 2d 855 (6th Cir., 1947), it is held: "Admission of testimony which was so closely a part of the history of alleged conspiracy and of substantive act as to be part of an interwoven chain of relevant circumstances was discretionary."

In Schino v. United States, 209 F. 2d 67 (9th Cir., 1953), it is held: "In conspiracy case, wide latitude is allowed in presenting evidence, and it is within discretion of trial court to admit evidence which even remotely tends to establish conspiracy charged."

Another facet of the question presented is reflected in the fact that the defendant appeared to pick up the money arranged for in the telephone conversations and thereby established a direct connection between himself and the parties making the calls. It is generally held that circumstances preceding or following a telephone conversation may serve to sufficiently identify the caller so as to render telephone communication admissible. State v. Williamson, 210 Kan. 501, 502 P. 2d 777.

Complaint is made that a police officer stated he was informed of a stranger in the building who had been there for some time and was acting suspiciously. As above noted, when questioned, this individual gave con-

tradictory reasons for his presence, his means of transportation, and an incomplete name. He was also found to be the defendant's brother and his presence at the scene certainly presented an unusual and unexplained coincidence. As stated in People v. Cooper, 326 Mich. 514, 40 N. W. 2d 708, in the reception of circumstantial evidence in a conspiracy prosecution, great latitude must be allowed, and jurors should have before them and are entitled to consider every fact which has a bearing on and a tendency to prove the ultimate fact in issue, and which will enable jurors to come to a satisfactory conclusion.

In view of the fact that defendant's brother had no apparent reason for his presence in the building, unless it was in connection with the defendant's project, and his general evasiveness, we believe the evidence was properly admitted.

In regard to the opinion expressed by one witness that the telephone caller was a black male, the statement, although admitted without a proper foundation, was harmless error. The witness made it clear that he could not identify the voice on the telephone as defendant's. This statement did not serve to connect the defendant with the telephone calls. The connection was made when defendant picked up the moneybag pursuant to the calls.

The judgment of the District Court is affirmed.

AFFIRMED.